UNITED STATES *v.* H. P. LAMBERT CO.

**No. 5452.**—Invoices dated Buenos Aires, Argentina, December 19, 1938, etc.
Entered at Boston, Mass., January 9, 1939, etc.
Entry No. 7556, etc.

Second Division, Appellate Term

(Decided October 7, 1941)

*Paul P. Rao*, Assistant Attorney General (*Frank X. O'Donnell*, special attorney), for the appellant.

*Joseph F. Lockett* for the appellee.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are applications for a review of a decision of Judge Brown (Reap. Dec. 5103) involving certain canned dog food imported from Argentina into the port of Boston, Mass., during the period from January to March, 1939. The merchandise was entered at $1.75 per crate of 48 tins or 87½ cents per carton of 24 tins, c. i. f. Boston. On entry, the importer deducted certain nondutiable charges, one of such charges covering ocean freight. Appraisement was made at the same unit prices, f. o. b. Buenos Aires, less nondutiable charges, with no allowance made for the charge designated as "ocean freight." Judge Brown found the dutiable values of the merchandise to be the export values thereof as represented by the entered values, counsel for the respective parties having agreed that there existed for said merchandise no foreign value.

At the trial, Sidney Davidson, president of the importing corporation, testified, in substance, that, after having made previous importations of canned dog food, his corporation, during the year 1938, made inquiry by correspondence with this exporter, whether or not a cheaper quality of dog food could be produced to bear the same label as on previous importations; that the exporter stated it could be done if a larger or "sufficient" quantity were purchased; that thereupon the present importations of the so-called cheaper quality dog food were purchased at $1.75 per crate of 48 tins or 87½ cents per carton of 24 tins, c. i. f. Boston, the prices on some of the invoices being stated as f. o. b. Buenos Aires, but that such statement was in error, the mistake having been corrected by an allowance credited on a subsequent shipment. That this credit was actually made is substantiated by the following extract from the affidavit of Juan K. Prescott, manager of the exporting company, which affidavit is in evidence herein as exhibit 1:

The above shipments marked ° were inadvertently invoiced at prices F. O. B. Buenos Aires instead of C. I. F. Boston. This error was noticed and the freight overcharged the Foster Canning Company was credited on the invoice covering the shipment per S. S. Ferncliff so that all of the merchandise was sold at prices C. I. F. Boston and we received payment on this basis.

The defendant below introduced, as exhibit 4, a report made by the American vice consul and approved by the American consul gen-

eral following a general investigation of the canned dog food market in Argentina. The only direct reference therein to this manufacturer is the following:

An interview with a representative of the United Canning Company, of Buenos Aires, revealed that this firm manufactures five different qualities of dog food, ranging in price from $1.75 U. S. to $2.20 U. S. per case of 48 15½ ounce tins, F. O. B. Buenos Aires. It is apparent, therefore that there are wide differences in quality and price as between the products of the two concerns from which data have been obtained.

In our judgment the weight of the evidence establishes that the purchase prices of the involved dog food were $1.75 per crate of 48 tins or 87½ cents per carton of 24 tins, c. i. f. Boston.

The question of law presented is whether or not the sales of this dog food to this single purchaser constitute an export value for said merchandise. On this issue we regard as very significant the following extracts from the testimony of the witness Davidson, particularly since he not only made the purchases but also arranged for the manufacture of this so-called cheaper product. Questioned by the court he testified—

Judge Brown. And when he agreed to sell you this stuff at these figures, were there any conditions to the purchase, that you would buy all his output or you would be practical agent for him in America, or anything of that kind?

The Witness. No, sir.

Judge Brown. He would have a perfect right to sell anybody in America, as far as you were concerned?

The Witness. Yes, sir.

Judge Brown. Did he put a limit on the quantity you had to buy?

The Witness. No limit on the quantity. We told him what we thought we could purchase.

Judge Brown. There was no agreement you would purchase a certain amount?

The Witness. No, sir.

Judge Brown. You told him you hoped to buy so much during that period?

The Witness. Yes, sir.

Judge Brown. And on that basis, he did sell you a quantity for a long period?

The Witness. Yes, sir.

Judge Brown. And you ordered the shipments as you needed them?

The Witness. Yes, sir.

Judge Brown. There was no strings to the arrangement, of any kind, that would compel you to buy a particular quantity over a period?

The Witness. None whatsoever.

From the evidence we are of the opinion that the sales of the involved dog food are sufficient to establish an export value therefor. United States v. Malhame & Co., 19 C. C. P. A. 164, T. D. 45276.

On the entire record we find as facts:

(1) That the involved merchandise consists of canned dog food imported from Argentina.

(2) That the purchase prices thereof were $1.75 per crate of 48 tins or 87½ cents per carton of 24 tins, c. i. f. Boston.

We therefore conclude as a matter of law that the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for the determination of the value of said merchandise,. and that such values were the entered values herein. Accordingly,. the judgment of the trial court is affirmed.

Judgment will be rendered accordingly.